**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DAVID P. GRIFFIN** | § | |
| | § | |
| **V.** | § | **A-10-CA-602-SS** |
| | § | |
| **PUBLIC ACCESS COMMUNITY TELEVISION, et al.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is David P. Griffin's Complaint, as supplemented (Clerk's Doc. Nos. 4 & 5). By standing order, this matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of this Court.

## I. BACKGROUND

On August 12, 2010, Mr. Griffin filed an application to proceed *in forma pauperis* in the above-styled cause. By order dated August 26, 2010, the undersigned granted Mr. Griffin the right to proceed IFP and directed Mr. Griffin to submit additional information so that the Court could perform its frivolousness review under 28 U.S.C. §1915(e)(2). Mr. Griffin filed that information on September 3, 2010.

## II. FRIVOLOUSNESS REVIEW

When a court determines that a plaintiff is indigent and permits a complaint to be filed without payment of costs, it is required by statute to review the complaint and "shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). The Court will therefore review Griffin's complaint under this standard.

In his complaint, Griffin alleges that Defendant Public Access Community Television[1] ("PACT") "discriminates against plaintiffs and violates the Americans with Disabilities Act." Complaint at 7. The ADA forbids discrimination against disabled individuals in major areas of public life, including employment (Title I of the Act, 42 U.S.C. §§ 12111–12117), public services (Title II, *Id.* at §§ 12131–12165), and public accommodations (Title III, *Id.* at §§ 12181–12189). *PGA Tour*, *Inc. v. Martin*, 532 U.S. 661, 675 (2001). Griffin appears to be asserting a claim under Title III of the ADA. Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To assert a viable claim under Title III, a plaintiff must satisfy three elements: (1) he has a disability; (2) the place that the defendant owns, leases, or operates is a place of public accommodation; and (3) he was denied full and equal enjoyment because of his disability. *Id.* Because Griffin failed to state in his Complaint what his disability is or how PACT discriminated against him because of that alleged disability, the Court ordered him to supplement his Complaint by answering questions contained in the Court's Order to compel a more definite statement. As part of the supplement, the Court ordered Griffin to specify how each individual defendant violated his rights under the ADA.

Griffin also appears to assert a First Amendment claim under 42 U.S.C. § 1983 against PACT. The First Amendment is a restraint on governmental action, however, not on private persons or entities. *E.g.*, *Belluso v. Turner Commc'ns Corp.*, 633 F.2d 393, 398 (5th Cir. 1980). In his complaint, Griffin did not allege that PACT is a governmental actor. He did not demonstrate that

---

[1]Griffin is also suing PACT's board of directors and several officials. Since all individual defendants are being sued in their official capacity, the Court will refer to the defendants collectively as PACT.

he was entitled under the First Amendment to access the television station. Finally, Griffin failed to specify how each individual defendant violated his First Amendment rights in this case. Thus, the Court ordered Griffin to remedy these deficiencies in his supplement.

After receiving Griffin's supplement, the Court is now able to determine the merits of his case. Neither his Section 1983 claim nor his ADA claim pass the frivolousness test promulgated under 28 U.S.C. § 1915(e)(2).

**A. Background**

While Griffin's complaint notes that he was once an employee of PACT, this suit does not involve that relationship.[2] Although the complaint is confusing, Griffin appears to essentially be making two claims: (1) that PACT violated his rights under the Americans with Disabilities Act; and (2) that PACT violated his First Amendment right to freedom of speech when it barred him from its facilities. Griffin alleges that he suffers from dyslexia. Response at 1. He notes that PACT, aware of his disability, purchased software that assisted him with reading and allowed him to dictate. *Id.* (It is not clear if this was when he was an employee of PACT, or thereafter.) In his filings, however, Griffin asserts that PACT persecuted him because of his condition by complaining about the noise from his computer reading to him, criticizing his spelling, and acting negatively towards others with disabilities in front of him. *Id.* at 2. Again, this appears to be focused on his time as an employee. With regard to the claim that PACT denied him access to its facilities, Griffin claims that he wanted to use PACT's platform to shed light on PACT's and the City of Austin's misdeeds, and that it refused to permit him access because it wanted to silence his message. *Id.*

---

[2]He states that he was hired by PACT as a producer in 2005. Response at 2. In June of 2008, he ceased working for PACT and apparently filed a lawsuit that was later dismissed. *Id.*

**B. ADA claim**

Griffin cannot establish a prima facie case under the ADA because he does not allege that PACT denied him full enjoyment of a public accommodation based on his disability. In his supplement, Griffin discloses that he suffers from dyslexia. But rather than using his disability against him, PACT purchased software that helped him overcome his disability. He further claims that PACT "decided I should not have access to the facility regardless if I am an American with a Disability or not." Response at 2. He claims that PACT is denying him access because of *content*, not his *disability*: "They have all been accommodating [of my disability] in the past. But, at this point they have denied me access to the facilities because they are frightened of the programming I would produce." Response at 3. Because Griffin does not allege that PACT is discriminating against him because of his disability, he cannot establish a prima facie case under the ADA.

**C. Section 1983 claim**

Griffin complains that PACT is unlawfully censoring him because his programming casts a negative light on the City and the channel. Traditionally, the Supreme Court has applied strict scrutiny to content-based censorship. *E.g.*, *U.S. v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 234 (2003). The issue presented here, however, is whether Griffin has alleged that he has a First Amendment right to use PACT's facilities—that PACT is a governmental actor. "To state a claim under [Section 1983], a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). If the plaintiff cannot demonstrate that the defendant acted under color of state law, the claim must fail because "merely

private conduct, no matter how discriminatory or wrong" is beyond Section 1983's scope. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

**1. Is PACT a state actor?**

Griffin suggests that PACT should be considered a state actor because of its many connections to the City of Austin. The Supreme Court has taken several approaches to determining whether a private actor's conduct can be fairly attributed to a state. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005). Under the "public function test," the court examines whether the private entity performs a function that is traditionally reserved solely to the State. The "state compulsion test" asks whether the private entity's actions are attributable to the State because the State exerts coercive power over the private entity or provides significant encouragement. The "nexus" or "state action test" looks at whether the State has insinuated itself into the affairs of the entity such that it was effectively a joint participant in the wrong. Finally, under the "joint action test" the private entity will be considered a state actor if it willfully participated in joint action with the State. The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry. . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). Accordingly, the Court will review Griffin's complaint under each of these tests.

The public function test examines whether the defendant acted under color of state law when it performed the act that formed the basis for the lawsuit. This does not question whether the defendant is a state actor in general, for "[a]n entity may be a state actor for some purposes but not for others." *Cornish*, 402 F.3d at 550. There are no allegations in the complaint that providing services for individuals to produce public access television shows, or determining the content of a

TV channel, is a traditional service of local government. Accordingly, PACT is not a state actor under this test.

The state compulsion test examines whether the private actor's conduct is attributable to the State because the State exerts coercive power over the private entity or provides significant encouragement to it. *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71 (1970). There is nothing in Griffin's complaint that alleges that the City (or any other state actor) participated in the decision to exclude him from PACT's facilities, or controlled or encouraged PACT in that regard, much less in any other aspect of its operation. Therefore, PACT's actions are not attributable to the City of Austin under this test.

The nexus or state action test examines whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974). While PACT has a contract with the City, "acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). Additionally, state regulation "does not by itself convert its actions into that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). There is no evidence that the City of Austin willfully participated, or was a joint participant, in PACT's actions. And the fact that it has contracted with PACT does not make PACT a state actor. Therefore, PACT's actions are not attributable to the City of Austin under this test.

The joint action test examines whether a private actor will be considered a state actor where the private actor is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). This test resembles the nexus test. As with that test, Griffin has not

produced any evidence that the City of Austin participated, encouraged, or compelled PACT to perform any of its actions. The only evidence Griffin provides that links the City of Austin to PACT is monetary contributions. *See* Response at 4 (arguing that PACT should be considered state actors because its building is owned by the City of Austin and it depends on the City for its financial obligations). But financial assistance, even if extensive, is insufficient to characterize a private party's actions as under color of state law. *See Rendell-Baker*, 457 U.S. at 840 (holding no state action even though educational institution received almost all of its funding from the state). Accordingly, PACT's actions are not attributable to the City of Austin under this test.

This result—that PACT is not a state actor under any of the varying tests—is confirmed by similar decisions of other courts. Panels of both the Second and Sixth Circuits have held that a public access channel is not a public forum and the operator is not a state actor. *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007); *Loce v. Time Warner Entm't Advance/Newhouse P'ship*, 191 F.3d 256, 266 (2d Cir. 1999). In *Wilcher* a producer of a public access television program filed suit against the cable operator after it imposed a twenty-five dollar fee on video submissions and limited submissions to people located in the geographic area that received the station's service. *Wilcher*, 498 F.3d at 518. The plaintiff argued that these hurdles violated her First Amendments rights. *Id.* But the court held that the cable operator did not satisfy the requirements of the public function test because "TV is not a traditional service of local government. A service provided by a distinct minority of local governments cannot fairly be characterized as a function traditionally reserved to the state." *Id.* at 519. The Court also held that city officials expressing their concern about programming did not rise to the level necessary to find coercion or encouragement. *Id.* at 519–20. Moreover, the cable franchisee did not automatically become a state actor when the local

government approved its rules. *Id.* at 520. In holding that the operator was not acting under color of state law, the Sixth Circuit approvingly examined the Second Circuit's decision in *Loce*. In *Loce*, the Second Circuit held that a cable operator did not act as a state actor when it enacted regulations to eliminate indecent broadcasting on a leased access channel. *Loce*, 191 F.3d at 267. The operator refused to air several broadcasts that it found indecent. *Id.* While the public access channels were subjected to federal and state regulation, this alone did not convert the operator's private action into state action. *Id.*

Finally, a district court in the Southern District of Texas recently granted defendant Houston Media Source, Inc.'s motion for summary judgment after the plaintiff Elimelech Shmi sued the station after it decided not to air his episodes and terminated his television series. *Shmi v. Houston Media Source, Inc.*, 2010 WL 294439, at *7 (S.D. Tex. July 20, 2010). Like PACT, Houston Media Source (HMS), another Texas 501(c)(3) corporation, contracted with a city to operate a public access cable television channel. *Id.* at *1. And like PACT, HMS had its own Board of Directors without the City exercising control over its activities. *Id.* On several occasions, HMS asked Shmi to edit his programs to eliminate nudity. *Id.* The relationship between Shmi and HMS deteriorated to the point where HMS told Shmi that he was barred from the facility and would be asked to leave if he attempted to enter the building. *Id.* The court held that HMS was not a state actor under any of the Supreme Court tests; therefore, HMS was entitled to summary judgment. *Id.* at *7.

## III. RECOMMENDATION

Griffin cannot maintain an ADA claim because he is not claiming that PACT denied him access or full enjoyment of its facilities based on his disability. Rather, he argues that PACT is censoring him because of the content of his message. This allegation falls under a Section 1983 claim, not the ADA, but since PACT is not acting under color of state law under any of the tests

provided by the Supreme Court, Griffin cannot maintain that claim either. In light of the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DISMISS** this case pursuant to 28 U.S.C. § 1915(e)(2).

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C) (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 27 day of September, 2010.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE